**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| K STREET CAPITAL INVESTMENTS LLC AQ-1,<br><br>Plaintiff,<br><br>v.<br><br>INFORMATION GRID LTD., WILLIAM COWELL DE GRUCHY, CLEVE ADAMS, DANIEL YOUNG, GREGORY DEWERPE, and AQUICORE, INC.,<br><br>Defendants. | Civil Action No. 24-314-GBW |

---

Daniel A. Griffith, WHITEFORD TAYLOR & PRESTON, Wilmington, DE; Eric H. Feiler, Michelle E. Hoffer, WHITEFORD TAYLOR & PRESTON, Richmond, VA.

*Counsel for Plaintiff K Street Capital Investments LLC AQ-1*

Jamie L. Brown, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE; Duane L. Loft, Brianna Hills Simopoulos, Adair Kleinpeter-Ross, PALLAS PARTNERS (US) LLP, New York, NY.

*Counsel for Defendants Information Grid, Ltd., William Cowell de Gruchy and Aquicore, Inc.*

Joseph J. Bellew, Michael C. Heyden, Jr., Joseph E. Brenner, GORDON REES SCULLY MANSUKHANI LLP, Wilmington, DE.

*Counsel for Defendants Cleve Adams and Daniel Young*

Hayden J. Driscoll, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, DE; Alex B. Spiro, Christopher D. Kercher, Jonathan E. Feder, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, NY.

*Counsel for Defendant Gregory Dewerpe*

**MEMORANDUM OPINION**

October 6, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are the following motions to dismiss (together, the "Motions to Dismiss"): (1) Mr. Dewerpe's[1] Motion to Dismiss (D.I. 30), which has been fully briefed (D.I. 31; D.I. 41; D.I. 44); (2) Aquicore, Mr. Cowell de Gruchy, and Infogrid's Motion to Dismiss (D.I. 33), which has been fully briefed (D.I. 34; D.I. 40; D.I. 43); and (3) Messrs. Adams and Young's Motion to Dismiss (D.I. 38), which has been fully briefed (D.I. 39; D.I. 42; D.I. 45). For the reasons set forth below, the Court grants Defendants' Motions to Dismiss and dismisses Plaintiff's Complaint (D.I. 1) without prejudice.

## I. BACKGROUND

### A. Factual Background

The following facts are drawn from the Complaint (D.I. 1) and assumed true for the purpose of resolving Defendants' Motions to Dismiss.

1. The Parties

Plaintiff is "one of a series of entities created from K Street Capital Investments, LLC ('K Street'), a syndicate of over 100 individual investors, based in Washington D.C. that backs US-based tech companies in high-growth regulated markets." D.I. 1 ¶ 27.

"Infogrid is a corporation organized under the laws of the United Kingdom with its principal place of business in Chelmsford, England." *Id.* ¶ 14. As part of the merger forming the basis of this litigation (the "Merger"), Infogrid acquired Aquicore. *See, e.g.*, *id.* ¶ 3 (alleging that

[1] The Plaintiff is K Street Capital Investments LLC AQ-1 ("Plaintiff" or "AQ-1"). The Defendants are Information Grid Ltd. ("Infogrid"), Aquicore, Inc. ("Aquicore"), William Cowell de Gruchy ("Mr. Cowell de Gruchy"), Cleve Adams ("Mr. Adams"), Daniel Young ("Mr. Young"), and Gregory Dewerpe ("Mr. Dewerpe").

Infogrid and Aquicore executed a merger agreement (the "Merger Agreement") on October 28, 2022).

"Aquicore is an analytics company that uses technology to analyze energy usage in commercial buildings, evaluate the environmental impact of these buildings, and optimize their energy usage." *Id.* ¶ 30. "Aquicore was founded in 2012 by Logan Soya, husband of Paige Soya, Managing Director of K Street." *Id.* ¶ 31.

The Individual Defendants are Messrs. Cowell de Gruchy, Adams, Young, and Dewerpe. At all relevant times, Mr. Cowell de Gruchy was the Chief Executive Officer ("CEO") of Infogrid, Mr. Adams was the CEO of Aquicore, and Mr. Young was the Chief Financial Officer ("CFO") of Aquicore. *Id.* ¶¶ 15-17. Mr. Dewerpe is an individual and resident of the United Kingdom, who founded A/O Proptech and also allegedly invested in Infogrid. *Id.* ¶ 18. Mr. Dewerpe is not alleged to have been an officer or director of Infogrid during the time leading up to the execution of the Merger Agreement. *Cf. id.* (alleging that Mr. Dewerpe is "now an investor in, and a director of, Infogrid").

2. <u>February 2022: Plaintiff Invests in Aquicore</u>

Leading up to February 2022, Aquicore had begun to make arrangements for its sale to potential acquirer. *See id.* ¶¶ 32-34. As part of these efforts, in or about February 2022, Plaintiff agreed to make an $800,000 investment in Aquicore in connection with Aquicore's convertible note offering. *Id.* ¶ 34. In conjunction with their agreement, Plaintiff and Aquicore executed a Note Purchase Agreement on or about February 23, 2022. *Id.* ¶ 37 (citing D.I. 1-3, Ex. 3). Following execution of the Note Purchase Agreement, Aquicore issued to Plaintiff a convertible promissory note (the "Aquicore Note"). D.I. 1 ¶ 41 (citing D.I. 1-4, Ex. 4).

3. Summer 2022: Aquicore Explores Merger with Infogrid

By June 2022, Aquicore had received interest from several purchasers, including Infogrid, who allegedly presented the best offer. *Id.* ¶ 49. "In a non-binding letter of intent ('LOI'), Infogrid proposed an all-cash offer of approximately $43 million to purchase Aquicore." *Id.* (citing D.I. 1-5, Ex. 5). Aquicore agreed to the LOI's terms. *Id.* ¶ 53.

"In conjunction with its offer, Infogrid represented that it had approximately 200 employees and $30 million in committed ARR ('CARR')." *Id.* ¶ 54. CARR was a metric used by Infogrid to measure its performance. *Id.* "Infogrid also represented that it was courting large institutional investors for a Series B financing round in which it would raise additional capital following the closing of the Merger. Infogrid represented that it had already drafted term sheets to raise $150 million post-merger to finance its all-cash offer." *Id.* "In June 2022, Infogrid, through its CEO, Mr. de Gruchy, represented to Aquicore and its team responsible for finding a purchaser that Infogrid had CARR of more than $30 million and sufficient cash to make a $43 million all-cash purchase of Aquicore." *Id.* ¶ 56. In July 2022, Aquicore signed the LOI. *Id.* ¶ 73.

4. Fall 2022: Subsequent Negotiations and the Merger Agreement

In late September 2022, "Infogrid disclosed that it would not be able to make good on its all-cash offer to purchase Aquicore, that it did not have line-of sight on the Series B financing, and that it did not have the line of credit it had originally promised it did—all of this despite Infogrid representing in the LOI that the Merger was not contingent on financing." *Id.* ¶ 76. By this point, Aquicore was running low on cash to support its operational expenses and acceded to Infogrid's late pivot to a non-cash offer. *See id.* ¶¶ 78-79.

The Merger consideration was not enough to pay out the noteholders and equity holders of Acquicore ("Aquicore Noteholders" and "Equity Investors"). *Id.* ¶ 82. "Thus, through September and October 2022 there were dual negotiations taking place to ensure the Merger took place." *Id.*

¶ 85. First, "Aquicore and Infogrid were renegotiating the terms of the Merger . . . ." *Id.* ¶ 86. Second, Aquicore Noteholders and Equity Investors were engaged in their own negotiations. *Id.* ¶ 86. Mr. Dewerpe was one of the individuals that allegedly "led" the Aquicore Noteholders group. *Id.* ¶ 87. Plaintiff "was not involved in or apprised of these negotiations . . . ." *Id.* ¶ 88; *see also id.* ¶ 90.

On October 28, 2022, Infogrid and Aquicore executed the Merger Agreement. *Id.* ¶ 3. "[A]s part of the Merger, on or about October 28, 2022, [Plaintiff] executed a Note Cancellation Agreement and Release" (the "Note Cancellation"). *Id.* ¶ 147 (citing D.I. 1-10, Ex. 10). Moreover, on the date the Merger closed, "Aquicore Noteholders and members of the Board of Directors of Aquicore executed on behalf of their entities the Omnibus Amendment to Notes" (the "Amendment"). *Id.* ¶ 93 (citing D.I. 1-7, Ex. 7). As compensation for the Merger, Aquicore's creditors, including Plaintiff, received Seller's Notes. D.I. 1 ¶ 4 (citing D.I. 1-2, Ex. 2). Plaintiff, however, did not learn of the existence of the Amendment – or the preceding negotiations – until May 2023, after the Merger closed. *Id.* ¶ 93.

### B. PROCEDURAL BACKGROUND

Plaintiff filed its Complaint in this action, alleging the following causes of action: (1) violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 against Infogrid ("Count I") (*id.* ¶¶ 159-168); (2) fraud against Infogrid and the Individual Defendants ("Count II") (*id.* ¶¶ 169-179); (3) civil conspiracy against Infogrid and the Individual Defendants ("Count III") (*id.* ¶¶ 180-185); and (4) breach of contract against Aquicore ("Count IV") (*id.* ¶¶ 186-191). Count I is the only claim arising under federal law. Defendants' Motions to Dismiss are fully briefed.

## II. LEGAL STANDARDS

### A. Motion to Dismiss under Rule 12(b)(6)

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When reviewing a Rule 12(b)(6) motion, [the Court] accept[s] as true all factual allegations in the complaint and view[s] those facts in the light most favorable to the non-moving party." *Id.* (citation omitted). However, the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Id.* (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

### B. Section 10(b) and Rule 10b-5

"Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities." *In re Cerevel Therapeutics Holdings, Inc. Sec. Litig.*, C.A. No. 25-417-GBW, 2026 WL 867614, at *5

(D. Del. Mar. 30, 2026), *motion to certify appeal denied*, 2026 WL 1724637 (D. Del. June 15, 2026). Pursuant to Section 10(b), it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). "To implement the statute, the SEC enacted Rule 10b-5, violation of which gives rise to a private cause of action." *In re Cerevel Therapeutics Holdings, Inc. Sec. Litig.*, 2026 WL 867614, at *5 (citations omitted).

Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> > (a) To employ any device, scheme, or artifice to defraud,
> >
> > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> >
> > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To bring a Section 10(b) claim, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *In re Focus Fin. Partners*, No. CV 23-1466

(MN), 2025 WL 961488, at *3 (D. Del. Mar. 31, 2025) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). "A complaint alleging securities fraud must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *In re Cerevel Therapeutics Holdings*, 2026 WL 867614, at *5 (quoting *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F. 3d 126, 144 (3d Cir. 2004)). "In addition, the Private Securities Litigation Reform Act of 1995 (the 'PSLRA') requires that the plaintiff 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "To the extent that the requirements of 9(b) conflict with the PSLRA, 'the PSLRA supersedes Rule 9(b) as it relates to Rule 10b-5 actions.'" *In re Cerevel Therapeutics Holdings*, 2026 WL 867614, at *5 (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F. 3d 256, 277 (3d. Cir. 2006)).

"A statement or omission of fact is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *In re Novo Nordisk A/S Sec. Litig.*, No. CV 25-713 (RK) (JBD), 2026 WL 2168296, at *14 (D.N.J. July 28, 2026) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). "Further, a statement or omission only gives rise to liability if it was 'misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.'" *Id.* (citation omitted). The plaintiff must "allege facts giving rise to

a 'strong inference' of scienter, which 'must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 176 (3d Cir. 2014) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).

## III. DISCUSSION

### A. The Court Grants Aquicore, Mr. Cowell de Gruchy, and Infogrid's Motion to Dismiss the Sole Federal Claim Alleged in Plaintiff's Complaint

Count I, the only claim arising under federal law, alleges Infogrid's violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. D.I. 1 ¶¶ 159-168.[2] To bring a Section 10(b) claim, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Focus Fin. Partners*, 2025 WL 961488, at *3 (citation omitted). Infogrid contends that the Complaint fails to sufficiently allege an actionable misstatement by Infogrid, scienter, reliance, and loss causation. Separately, Infogrid generally contends that Plaintiff fails to allege any harm.

The Complaint references three alleged representations by Infogrid: first, that Infogrid "had approximately 200 employees and $30 million in committed ARR [('CARR')]"; second, that

[2] "Claims under Rules 10b-5(a) and (c) are referred to as 'scheme liability claims' because they make deceptive conduct actionable, as opposed to Rule 10b-5(b), which relates to deceptive statements." *In re RenovaCare, Inc. Sec. Litig.*, No. 2:21-CV-13766 (BRM) (JSA), 2024 WL 2815034, at *22 (D.N.J. June 3, 2024) (citation omitted). Plaintiff did not address the different subsections of Rule 10b-5 in its briefing and focuses upon alleged misstatements. Moreover, Count I itself relies upon alleged misstatements and omissions of material fact, as opposed to other deceptive conduct. *See* D.I. 1 ¶¶ 162-163. Accordingly, the Court focuses on Rule 10b-5(b) liability. However, the Court will not preclude Plaintiff from alleging Rule 10b-5(a) or (c) theories in its amended complaint, if Plaintiff brings an amended complaint.

Infogrid "was courting large institutional investors for a Series B financing round in which it would raise additional capital following the closing of the Merger"; and third, that Infogrid "had already drafted term sheets to raise $150 million post-merger to finance its all-cash offer." D.I. 1 ¶ 54.[3] While this paragraph alleges that Infogrid made representations, it does not appear to contain the full statements containing these representations, state who at Infogrid made the relevant statements, or whether they were accompanied by, for example, cautionary language. Relatedly, the Complaint alleges that, "[i]n June 2022, Infogrid, through its CEO, Mr. [Cowell] de Gruchy, represented to Aquicore and its team responsible for finding a purchaser that Infogrid had CARR of more than $30 million and sufficient cash to make a $43 million all-cash purchase of Aquicore." *Id.* ¶ 56. Neither of these paragraphs indicate that Infogrid or Mr. Cowell de Gruchy actually made these alleged representations to Plaintiff. *See id.* ¶¶ 54 (alleging that the representations were made "in conjunction with [Infogrid's] offer"), 56 (alleging representations to "Aquicore and its team"). Rather, piecing together the allegations of the Complaint, it appears that these representations were later repeated to Plaintiff by the "Aquicore Defendants." *See, e.g.*, *id.* ¶¶ 5, 74, 99; *see also id.* ¶ 1 (defining "Aquicore Defendants"); ¶ 72 (alleging, in a conclusory manner, that Infogrid intended for the information to be repeated).[4] In general, it is not clear how many times the statements were

---

[3] Plaintiff's Complaint and briefing focus upon the latter half of the first statement, which pertains to CARR, as opposed to Infogrid's employment numbers. The Complaint did not make any particularized allegations with respect to Infogrid's employment numbers during the June 2022 to October 2022 time period. *Cf.* D.I. 1 ¶ 32 (alleging that, "[b]y November 2021, Aquicore had grown into a company with approximately fifty employees . . . ."). Similarly, as for the second and third representations, Plaintiff merely alleged that they were not true, without other particularized allegations of falsity. *See id.* ¶ 54.

[4] In the "typical" Section 10(b) case, "a plaintiff claims a defendant made material public misrepresentations or omissions in order to affect the price of its publicly-traded stock, i.e., to perpetrate 'fraud on the market.'" *McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 425 n.2 (3d Cir. 2007). Conversely, "non-typical" Section 10(b) cases involve "a misrepresentation or omission that directly induces another party to enter into a private transaction." *Pure Earth, Inc. v. Call*, 531 F. App'x 256, 260 (3d Cir. 2013) (citing *McCabe*, 494 F.3d at 420-21). For example,

repeated by each Aquicore Defendant, whether all of the statements were repeated each time, when exactly each Aquicore Defendant repeated one or more of the statements, whether these statements were repeated in writing or orally, or whether, when repeating those statements, the maker of the statement attributed the statement (or the relevant information) directly to Infogrid. Having thoroughly reviewed the Complaint, the Court finds that the facts alleged regarding the relevant alleged misstatements and the circumstances surrounding them lack the particularity required by Rule 9(b) and the PSLRA. *See, e.g.*, *Handal v. Innovative Indus. Props., Inc.*, 157 F.4th 279, 293 (3d Cir. 2025) (explaining that the plaintiff must "plead the who, what, when, where, and how: the first paragraph of any newspaper story" (citation omitted)).

Moreover, it is well-settled that "Defendants cannot be held responsible for statements they did not make." *City of Edinburgh Council*, 754 F.3d at 172 (citation omitted). In other words, "[a] securities fraud claim based on purported statements that a defendant did not actually make fails, necessarily, to state a claim upon which relief can be granted." *Goldsmith v. Weibo Corp.*, C.A. No. 17-4728 (SRC), 2018 WL 2733694, at *9 (D.N.J. June 7, 2018) (citing *City of Edinburgh Council*, 754 F.3d at 172). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

---

in *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865 (3d Cir. 2000), the plaintiff alleged that it was induced to make a substantial investment in the defendant "as a result of personal representations directly made to its executives" by the defendant's executives. *See id.* at 871 (observing that, "[i]n one sense, this action is more akin to a contract action than a securities action"). The challenged communications in the instant action were even less direct than in *EP Medsystems*, since the alleged misstatements appear to have been made directly by the acquiring company, Infogrid, to the target corporation, Aquicore, and its executives, rather than Plaintiff.

In its opposition, Plaintiff explains that its theory relies upon the statements of others, allegedly repeating Infogrid's representations, being considered directly attributable to Infogrid. *See* D.I. 40 at 14 (asserting that the Complaint's allegations are "sufficient to establish that Infogrid and Mr. de Gruchy made statements *directly* to AQ-1" (emphasis added)). However, the Court finds that Plaintiff has not alleged with sufficient particularity facts showing that Infogrid could be deemed to have "made" those statements. At the relevant time, prior to the Merger, Aquicore was a separate entity from Infogrid. Furthermore, Messrs. Adams, Young, and Dewerpe are not alleged to have been corporate representatives of Infogrid during the time that they allegedly repeated Infogrid's statements. Finally, the Complaint lacks allegations showing that Infogrid was otherwise the entity with ultimate authority over the statements of Messrs. Adams, Young, Dewerpe, or Aquicore. As a result, the Complaint lacks particularized allegations that the statements of Messrs. Adams, Young, Dewerpe, or Aquicore can be attributable to Infogrid itself, as opposed to merely being statements about the Merger by individuals or entities other than Infogrid. Absent allegations supporting the attribution of those statements to Infogrid, the Complaint necessarily fails to state a claim against Infogrid. *See Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 232 (E.D. Pa. 2021) (dismissing defendants where the plaintiffs had not alleged "with particularity facts showing that [the defendants] had ultimate authority for any of the statements at issue"); *cf. Raab v. Gen. Physics Corp.*, 4 F.3d 286, 288 (4th Cir. 1993) (explaining that federal securities laws "do not require [a] company to police statements made by third parties for inaccuracies, even if the third party attributes the statement to [the company]").

To the extent that liability under Rule 10b-5 may lie where a person or entity communicates a statement indirectly,[5] beyond its cursory allegations to Infogrid's "intent," the Complaint lacks sufficient factual allegations concerning the repeated statements for the Court to determine that these statements were attributed to Infogrid. *See Janus*, 564 U.S. at 147 n.11; *Lopes v. Viera*, No. 1:06-CV-01243 JLT, 2012 WL 691665, at *5-6 (E.D. Cal. Mar. 2, 2012) (finding that *Janus* did not specifically preclude liability in a situation where the statement in question specifically attributed information to the defendant and reported that the defendant had provided the financial information contained within the statement). In addition, some allegations of the Complaint appear to indicate that the decision of the Aquicore Defendants to repeat the alleged statements was of their own accord, regardless of Infogrid's alleged intent. *See* D.I. 1 ¶¶ 3 (alleging that "Infogrid duped Aquicore"), 5 (alleging separate rationale for why the Aquicore Defendants' repeated the statements).

In a similar vein, "[w]hen assessing the scienter of a corporate defendant that, like [Infogrid], lacks a mind of its own, the analysis reduces to multiple questions." *Handal*, 157 F.4th at 301.[6] These questions include whether "the complaint adequately allege[s] that any individuals had scienter," and whether the Court may "impute that individual's (or those individuals') scienter

[5] In a footnote, the Supreme Court acknowledged in *Janus* that it "need not define precisely what it means to communicate a 'made' statement indirectly because none of the statements in the prospectuses were attributed, explicitly or implicitly, to [the defendant]." *Janus*, 564 U.S. at 147 n. 11; *see also id.* ("The phrase 'directly or indirectly' is set off by itself in Rule 10b–5 and modifies not just 'to make,' but also 'to employ" and 'to engage.' We think the phrase merely clarifies that *as long as a statement is made, it does not matter whether the statement was communicated directly or indirectly to the recipient*." (emphasis added)).

[6] Plaintiff has not invoked the doctrine of corporate scienter, under which "it is possible to draw a strong inference of [a corporation's] scienter without being able to name the individuals who concocted and disseminated the fraud." *Handal*, 157 F.4th at 303 (citation omitted); *see also id.* at 304 (observing that the Third Circuit had not considered the propriety of the doctrine). Nor does it appear that the doctrine would apply under the facts alleged.

to the corporation." *Id.* As for Mr. Cowell de Gruchy, Plaintiff alleges that he was Infogrid's CEO during the relevant period and that he made representations on behalf of Infogrid to Aquicore and its team. D.I. 1 ¶¶ 15, 56. Mr. Cowell de Gruchy, as CEO of Infogrid, arguably had apparent authority to make statements to Aquicore in conjunction with Infogrid's offer to purchase Aquicore. *See Institutional Invs. Grp. v. Avaya*, Inc., 564 F.3d 242, 251-52 (3d Cir. 2009) (holding that it is proper to impute statements by corporate employees that have "apparent authority" to make them). Ultimately, however, Plaintiff has not alleged facts with sufficient particularity to infer that Mr. Cowell de Gruchy made those statements with scienter to defraud Plaintiff. *See Handal*, 157 F.4th at 301; *cf. ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (explaining that the scienter requirement considers whether "the facts alleged [] support an inference of an intent to defraud the plaintiffs rather than some other group"). The relevant allegations as to Mr. Cowell de Gruchy's scienter, even considered collectively, lack particularity and largely focus on Mr. Cowell de Gruchy's actions after the execution of the Merger Agreement, long after the alleged misstatements at issue. *See Avaya*, 564 F.3d at 267-68 (explaining that the inquiry must consider "all of the facts alleged, taken collectively," as opposed to whether individual allegations, "scrutinized in isolation, meets that standard").

For the foregoing reasons, the Court grants Aquicore, Mr. Cowell de Gruchy, and Infogrid's Motion to Dismiss with respect to Count I. Thus, Count I of the Complaint is dismissed without prejudice.[7]

---

[7] Having found that Plaintiff failed to identify any actionable statements or omissions by Infogrid made with scienter, the Court declines to address Infogrid's contentions regarding reliance and loss causation, as the analysis of these prongs may be impacted by the allegations of Plaintiff's amended complaint, if Plaintiff brings an amended complaint.

**B. The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims**

The Complaint invokes subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a), citing the securities law claim, and supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a). D.I. 1 ¶¶ 20-21. In the previous section, the Court dismissed the sole cause of action arising under federal law, which leaves only Plaintiff's state law causes of action of fraud, conspiracy, and breach of contract.

The Complaint does not invoke an alternative basis for original jurisdiction as to any of the state law claims, such as diversity of citizenship jurisdiction. *See* 28 U.S.C. § 1332. Assuming it had done so, "[i]t is the plaintiff's burden to establish diversity of citizenship." *Walls v. Jud. Sys.*, C.A. No. 24-5739, 2025 WL 97628, at *4 (E.D. Pa. Jan. 14, 2025) (collecting cases); 13E Wright & Miller, Fed. Prac. & Proc. § 3602.1 (3d ed., April 2026 update). Plaintiff alleges that it "is part of a Delaware series limited liability company with its principal place of business in the District of Columbia." D.I. 1 ¶ 13. Thus, it appears that Plaintiff is an LLC, and "the citizenship of an LLC is determined by the citizenship of its members." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citation omitted). Plaintiff, however, did not allege the citizenship of its members. *See SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 408 (5th Cir. 2023) ("To establish diversity jurisdiction in a suit by or against an LLC, a party 'must specifically allege the citizenship of every member of every LLC.'" (quoting *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017))); *see also, e.g.*, *Lincoln*, 800 F.3d at 108 n. 36 ("[W]here the unincorporated association is the proponent of diversity jurisdiction, there is no reason to excuse it of its obligation to plead the citizenship of each of its members." (citations omitted)); *Prime Image Tech. Sols., LLC v. Urb. Edge Network, LLC*, No. 24-CV-6540, 2025 WL 4812338, at *1 (E.D. Pa. July 7, 2025) ("The Complaint explains only that Plaintiff is a 'Delaware limited liability

company with its principal place of business' in Pennsylvania and that Defendant is a 'limited liability company with offices [in] . . . Las Vegas, Nevada.' This is not enough to make out diversity jurisdiction." (cleaned up)). Under the circumstances, absent a clear basis for jurisdiction over the remaining state law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiff's Complaint (D.I. 1) without prejudice. Given that the Court has dismissed all claims of the Complaint, Aquicore, Mr. Cowell de Gruchy, and Infogrid's Motion to Dismiss (D.I. 33) is granted, Mr. Dewerpe's Motion to Dismiss (D.I. 30) is granted, and Mr. Adams and Mr. Young's Motion to Dismiss (D.I. 38) is granted. An Order consistent with this Memorandum Opinion follows.

[8] The Court expresses no opinion on the merits of Plaintiff's state law claims. If Plaintiff files an amended complaint, Defendants may renew their respective Motions to Dismiss as to Plaintiff's state law claims.